# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DAVIN GREEN,**

    Plaintiff,

v.                                                                        Case No. 15-CV-786

**JONATHON NEWPORT and**
**CITY OF MILWAUKEE,**

    Defendants.

## DECISION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On November 26, 2014, Davin Green was sitting in the driver's seat of his vehicle in the parking lot of an auto parts store when he was stopped by Jonathon Newport, a police officer with City of Milwaukee Police Department (MPD). Officer Newport directed Mr. Green out of the vehicle so that he could be frisked. The ensuing pat-down search uncovered a handgun in Mr. Green's waistband.

Thereafter, Mr. Green filed a complaint pursuant to 42 U.S.C. §§ 1983 & 1988 and the Fourth and Fourteenth Amendments to the Constitution, alleging that Officer Newport and the City of Milwaukee violated his right to be free from unreasonable searches and seizures when Officer Newport stopped and frisked him without reasonable suspicion. The Court already has granted summary judgment in favor of Mr. Green against Officer Newport.

The City has now moved for summary judgment, arguing that there is no dispute of material fact concerning the essential elements of Mr. Green's *Monell*[1] claims against the City. Having considered the arguments presented by counsel in their briefs and at the oral hearing, the Court determines that the City is entitled to judgment as a matter of law with respect to Mr. Green's *Monell* claims. The Court therefore will grant the City's motion, and the City will be dismissed as a defendant in this action.

I.  **Factual Background**

The Court provided a detailed recitation of the facts in its Decision and Order granting summary judgment in favor of Mr. Green. *See* ECF No. 42 at 2–5. The Court briefly summarizes those facts here and provides additional facts as needed to resolve the City's summary judgment motion.

On November 26, 2014, Officer Newport and his partner responded to a suspicious person complaint at an O'Reilly Auto Parts store located in Milwaukee. Decision & Order 2. An employee of the store had reported to police that a Mercury Grand Marquis drove around the store's parking lot about five times. When Officer Newport came within view of the parking lot, he observed the Marquis parked in front of the store next to a Chevrolet Malibu. *Id.* at 3–4. An individual, later identified as Joe Lindsey, was standing outside the front passenger door of the Malibu. After he saw the officers, Ms. Lindsey leaned into the front passenger window of the Malibu for about one or two seconds. *Id.* at 4. Believing that Mr.

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Lindsey had either concealed or recovered a weapon when he leaned into the Malibu, Officer Newport conducted an investigatory stop of the vehicles and their occupants.

Mr. Green was sitting in the driver's seat of the Malibu. Officer Newport directed Mr. Green to exit the vehicle so that he could be frisked. A pat-down search uncovered a handgun in Mr. Green's waistband. *Id.* at 5.

Mr. Green was charged in Wisconsin state court with unlawfully carrying a concealed weapon. *See* Evidentiary Hearing Transcript in *State v. Green*, No. 14CM4886 (Milw. Cty. Cir. Ct. Apr. 20, 2015), ECF No. 13-1. At Mr. Green's suppression hearing, Officer Newport testified that he was familiar with the City's standard operating procedure concerning frisks. Hr'g Tr. 29:12–30:11. He also testified that he had received training on how to conduct frisks only once. *See* Defendant's Response to Plaintiff's Additional Proposed Findings of Fact ¶¶ 1–4, ECF No. 72. Officer Newport did not recall that training containing any legal elements. *See id.*

Notwithstanding Officer Newport's testimony, all MPD police officers receive extensive training. *See* Proposed Findings of Fact in Support of Defendant's Motion for Partial Summary Judgment ¶ 4, ECF No. 66. The training begins with a twenty-two to twenty-three-week intensive police recruit training course at the Milwaukee Fire and Police Training Academy. *Id.* ¶ 5. After successfully completing the recruit training, police officers are assigned to a district police station where they work with and receive on-the-job training from a field training officer. *Id.* ¶¶ 6–8. Officers

3

also receive annual, "in-service" training on various topics, including searches and seizures and the state DOJ's Defense and Arrest Tactics manual. *Id.* ¶¶ 9, 17. The manual summarizes *Terry v. Ohio* and provides the legal standards for performing a *Terry* stop and a frisk. *Id.* ¶¶ 46–51; *see also* Exhibit B to Declaration of Edward Flynn, ECF No. 64-2.

Officer Newport successfully completed recruit and field training. Def.'s PFOF ¶¶ 20, 26–28. Through this training, Officer Newport was taught the legal standard applicable to stops and frisks. *Id.* ¶¶ 22–24. Officer Newport also attended two in-service training sessions pertaining to stops and frisks: the first session focused on the characteristics of an armed gunman; the second session, which was taught by an Assistant United States Attorney, focused on the constitutional principles surrounding searches and seizures *Id.* ¶¶ 29–37; *see also* Exhibit A to Declaration of Jonathon Newport, ECF No. 65-1.

The MPD, under the leadership of Chief Edward Flynn, has established policies and standard operating procedures to provide officers guidance on a variety of issues, including the constitutional requirements for stops and frisks. Def.'s PFOF ¶¶ 1–3, 7–8, 10–16. For example, the MPD maintains an SOP on "Citizen Contacts, Field Interviews, and Search and Seizure." *Id.* ¶ 15; *see* Exhibit C to Declaration of Edward Flynn, ECF No. 64-3. This SOP indicates that all searches or seizures must be based on reasonable suspicion or probable cause (as required by the Fourth Amendment), contains guidance on performing *Terry* stops and pat-down frisks, defines "reasonable suspicion" and the "plain feel doctrine," and

4

provides a list of factors an officer may rely on in justifying a *Terry* stop. *See* Def.'s PFOF ¶¶ 42, 52–60; *see generally* Flynn Decl. Ex. C. All officers receive training on and are required to comply with the SOPs. Def.'s PFOF ¶¶ 3, 7–8, 10–16, 43.

All MPD officers also receive training on and are bound by the department's Code of Conduct. *Id.* ¶¶ 3, 11; *see also* Exhibit A to Declaration of Edward Flynn, ECF No. 64-1. The Code requires that police investigations be based upon, at a minimum, reasonable suspicion or an actual or possible offense or crime. Def.'s PFOF ¶ 44; Flynn Decl. Ex. A ¶ 1.04.

Officer Newport was trained on and understood that he was required to be familiar with MPD policies and SOPs. Def.'s PFOF ¶ 25. At the time he stopped and frisked Mr. Green, Officer Newport understood the MPD policies concerning stops and frisks—that is, he understood that any stop and frisk must be supported by reasonable suspicion based on the totality of the circumstances. *Id.* ¶ 40–41.

Furthermore, MPD officers are routinely evaluated. *Id.* ¶ 61. New officers receive constant supervision and on-the-job training from field training officers. *Id.* ¶ 62. These field training officers provide guidance and evaluation to new officers after each shift. *Id.* ¶ 63. Officers also are evaluated by other supervisors—monthly for new officers and biannually for others. *Id.* ¶¶ 64–72. As part of the evaluation process, supervisors can impose remedial training on any areas where the officer is not performing up to MPD standards. *See id.*

In or around January 2015, Officer Newport was subject to a biannual review. *See* Def.'s Resp. to Pl.'s Add'l PFOF ¶¶ 7–12. The evaluation indicated that

5

Officer Newport was "performing at exemplary rate" and was signed by his supervising sergeant, supervising lieutenant, and commanding officer. *Id.*; *see also* Exhibit 2 to Declaration of William F. Sulton, ECF No. 67-2. With respect to the incident involving Mr. Green, the evaluation states as follows: "On November 26, 2014 PO NEWPORT and partner responded to a suspicious person complaint. Upon arrival an [sic] subject stop was conducted and the subject was in possession of a black Sig Sauer .40 Caliber Pistol. The subject was arrested for CCW." *Id.*

## II. Procedural Background

Mr. Green filed the present action on June 29, 2015. *See* Complaint, ECF No. 1. The matter was randomly assigned to this Court, and all parties consented to magistrate judge jurisdiction. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b).

Mr. Green's complaint states two causes of action: (1) unlawful stop and frisk against Officer Newport, and (2) unlawful stop and frisk against the City. Complaint ¶¶ 40–59. The Complaint alleges that Officer Newport violated Mr. Green's Fourth Amendment rights when he knowingly stopped Green without reasonable suspicion to believe that Green was committing or had committed a crime and knowingly frisked Green without reasonable suspicion to believe that Green was armed and dangerous. *Id.* ¶¶ 40–43. The Complaint further alleges that, to the extent Officer Newport believed that Mr. Green was armed and dangerous, this belief was unreasonable, irrational, and motivated by racial bias. *Id.* ¶ 44.

As to the second cause of action, the Complaint alleges that the City failed to train Officer Newport on the legal standards applicable to stops and frisks, failed to

6

require that Newport review its policies on when to conduct stops and frisks, failed to supervise Newport while he was conducting stops and frisks, failed to evaluate Newport's performance during stops and frisks, and failed to provide post-evaluation instruction to Newport to ensure that citizens were not being subjected to unlawful stops and frisks. *Id.* ¶¶ 46–52. The Complaint similarly alleges that it is the practice and custom of the City not to train police officers on its policies concerning stops and frisks, not to require police officers to review its policies on stops and frisks, not to train police officers on the legal standards applicable to stops and frisks, and not to supervise "junior officers" when they conduct stops and frisks. *Id.* ¶¶ 53–56.

The parties filed cross-motions for summary judgment as to the claim against Officer Newport. On February 19, 2016, the Court issued a decision and order finding that Officer Newport had stopped and frisked Mr. Green without reasonable suspicion and that Officer Newport was not entitled to qualified immunity. *See* Decision & Order. The Court thus granted Mr. Green's motion for summary judgment and denied summary judgment in favor of Officer Newport. Officer Newport has appealed that decision with respect to the Court's denial of qualified immunity. *See* Notice of Appeal, ECF No. 45.

On September 19, 2016, the City filed a motion for summary judgment as to the *Monell* claims alleged against the City. *See* Defendant's Motion for Partial Summary Judgment, ECF No. 62. The parties have submitted their briefs, *see* Brief in Support of Defendant's Motion for Summary Judgement, ECF No. 63; Brief in

7

Opposition to Defendant City of Milwaukee's Motion for Partial Summary Judgment by Plaintiff Davin Green, ECF No. 68; and Defendant City of Milwaukee's Reply Brief in Support of Defendant's Motion for Summary Judgment, ECF No. 71, and the Court heard oral argument on February 15, 2017, *see* Minute Entry for Oral Argument, ECF No. 75. The matter is now ready for disposition.

### III. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A moving party "is entitled to judgment as a matter of law" where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Liberty Lobby*, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (quoting *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). That is, "to survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in [his] favor." *Fitzgerald*, 707 F.3d at 730 (quoting *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)).

## IV. Discussion

Davin Green brings suit under 42 U.S.C. § 1983, asserting that the City (in addition to Officer Newport) has violated his Fourth and Fourteenth Amendment rights.

### A. Legal framework

Although a city is considered a "person" within the meaning of § 1983, liability does not attach vicariously; in other words, municipalities cannot be held liable under § 1983 on a respondent superior theory. *Monell*, 436 U.S. at 691–92. Rather, a city may be liable for the unconstitutional actions of its employees under § 1983 only when the constitutional deprivation was caused by an official municipal

9

custom, practice, or policy. *Id.* at 690–91; *Palka v. City of Chi.*, 662 F.3d 428, 434 (7th Cir. 2011).

> To establish an official policy or custom, a plaintiff must show that his constitutional injury was caused "by (1) the enforcement of an express policy of the [city], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority."

*Wragg v. Vill. of Thornton*, 604 F.3d 464, 467–68 (7th Cir. 2010) (quoting *Latuszkin v. City of Chi.*, 250 F.3d 502, 504 (7th Cir. 2001)).

"Absent proof that the injury in question was caused by an employee with final policymaking authority or by an express policy or established custom of the municipality, there can be no liability on the part of the municipality itself." *Palka*, 662 F.3d at 434. Accordingly, to demonstrate that a city is liable for a harmful custom or practice, "the plaintiff must show that [city] policymakers were 'deliberately indifferent as to [the] known or obvious consequences.'" *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (quoting *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002)). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Thomas*, 604 F.3d at 303.

**B. Legal analysis**

The City has moved for summary judgment on Mr. Green's *Monell* claims, arguing that he has failed to offer any evidence—beyond the single incident involving Officer Newport—to show that the City maintained an unconstitutional custom, practice, or policy of failing to train, supervise, or evaluate its police officers

10

on the legal standards concerning stops and frisks. *See generally* Def.'s Br. 14–15, 18. The City also submitted the declarations of Chief Flynn and Officer Newport, which seemingly provide affirmative evidence that disproves these claims. *See* Declaration of Edward Flynn, ECF No. 64; Declaration of Jonathon Newport, ECF No. 65.

In responding to the summary judgment motion, Mr. Green first argues that the City has failed to carry its initial burden of proof under Rule 56(a). *See* Pl.'s Br. 3–5. Mr. Green also attempts to provide evidence to support his *Monell* claims, arguing that there is at least a factual dispute as to whether Officer Newport was adequately trained and supervised. *See* Pl.'s Br. 5–7. The Court will address each argument in turn.

### 1. Whether the City has met its initial burden under Rule 56

Mr. Green maintains that the declarations of Chief Flynn and Officer Newport do not satisfy the City's "initial burden of proving there is no material question of fact with respect to an essential element of the nonmoving party's case." *Id.* at 3 (quoting *Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 507 (7th Cir. 2014)). According to Mr. Green, Chief Flynn's declaration—which states "[u]pon information and belief" that Officer Newport successfully completed training and that all officers, including Officer Newport, were informed of the MPD's policies and procedures—establishes that he does not have any personal knowledge of Officer Newport's training or supervision. Pl.'s Br. 3–4 (citing Flynn. Decl. ¶¶ 18 and 20). Mr. Green further maintains that the additional training mentioned in Officer

11

Newport's declaration "should be disregarded" because Newport testified at the state suppression hearing that he received only one training on frisks and he did not claim to have any additional training in his answers to certain interrogatories. Pl.'s Br. 4–5 (citing Hr'g Tr. 29:18–30:10 and Exhibit 1 to Declaration of William F. Sulton 2–4, ECF No. 67-1). The Court is unpersuaded by these arguments.

First, Mr. Green's argument is not supported by the evidence he cites. Chief Flynn clearly established in his declaration that he has personal knowledge of the training that all MPD officers, including Officer Newport, receive. *See generally* Flynn Decl. That Chief Flynn apparently does not have first-hand knowledge that Officer Newport successfully completed this training does not demonstrate that Flynn was deliberately indifferent to a lack of training within the MPD. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (holding that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact").

Likewise, Officer Newport's declaration does not contradict his prior testimony or his answers to certain interrogatories posed by Mr. Green. At the state suppression hearing, Officer Newport testified that he had received only one training *on how to physically perform* a frisk. *See* Hr'g Tr. 29:18–30:12. This testimony does not preclude him from later claiming to have received other training concerning *the legal standard* applicable to frisks. Similarly, Officer Newport did not violate Fed. R. Civ. P. 37(c)(1) when he failed to include this other training in

response to broad interrogatories that asked him to state the factual basis for each affirmative defense and denial asserted in the defendants' answer to the Complaint. Officer Newport's interrogatory responses put Mr. Green on notice that Newport relied on his training and experience when he decided to stop and frisk Green. *See* Sulton Decl. Ex. 1 p. 2–4. Mr. Green therefore could have used other discovery devices to unpack what this training and experience entailed.

Second, and most importantly, Mr. Green's argument rests on a misunderstanding of Rule 56. Although the City did indeed submit declarations in support of its summary judgment motion, it was not required to do so. Rule 56 does not require a moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp.*, 477 U.S. at 323; *see also Spierer v. Rossman*, 798 F.3d 502, 507–08 (7th Cir. 2015). And while Mr. Green is correct that the moving party bears the initial burden of informing the court of the basis of the motion and identifying supporting materials, he fails to realize that the moving party can discharge this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 323–25. That is precisely what the City has done in this case.

Accordingly, the Court finds that the City satisfied its initial burden of demonstration under Rule 56. *See Spierer*, 798 F.3d at 508. The burden therefore shifted to Mr. Green, who bears the ultimate burden of proof at trial, "to come

forward with specific facts showing that there is a genuine issue for trial." *Id.* at 507.

### 2. Whether Mr. Green has presented sufficient evidence to establish the existence of the elements essential to his *Monell* claims

Mr. Green has not pointed to any express policy of the City that caused the violation of his constitutional rights. Instead, he asserts that the City has an unwritten but widespread practice of performing stops and frisks without reasonable suspicion and that the City has been deliberately indifferent in its failure to adopt policies necessary to prevent such constitutional violations. *See* Pl.'s Br. 2 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). As best the Court can tell, Mr. Green appears to argue that the City failed to train officers (including Officer Newport) on the legal standards applicable to stops and frisks and failed to supervise officers (including Officer Newport) while performing stops and frisks. *See* Pl.'s Br. 7.

#### a. Failure to train

To support these theories, Mr. Green first points to Officer Newport's suppression hearing testimony. According to Mr. Green, Officer Newport testified that he received only one training on frisks during his three years as an MPD officer and that this training did not "provide instruction on the totality of the circumstances legal standard." Pl.'s Br. 4–5. Mr. Green maintains that, based on this testimony, a reasonable jury could conclude that Officer Newport was

14

inadequately trained. *Id.* at 5. He further maintains that this testimony "proves Milwaukee was deliberately indifferent to an obvious constitutional need to provide training." *Id.* at 7. The Court disagrees.

For one, Mr. Green's characterization of Officer Newport's testimony hinges on an incomplete and inaccurate reading of the suppression hearing transcript. When asked at the hearing how many times the MPD provided him training on frisks, Officer Newport replied "once" and explained that the training occurred three years prior. Hr'g Tr. 29:18–23. It is clear from the transcript, however, that Officer Newport was referring only to the training he had received on physically performing frisks. When asked to explain this training, Officer Newport replied, "Well, we would hold mock pat downs. Wouldn't be any totality of the circumstances. It would be a straight forward, put your hands out, like an airplane, and with the flat hand, you go along the outer most garment of somebody's clothing." *Id.* at 30:03–10. Indeed, Mr. Green's own counsel—who also represented Green in the state criminal matter—acknowledged the limited scope of Officer Newport's testimony. *See id.* at 30:11–12 ("And what you're describing, officer, is how you physically do a frisk.").

Moreover, a review of the entire transcript clearly demonstrates Officer Newport's familiarity with and understanding of the totality of the circumstances standard. Officer Newport referenced this legal standard five times during his testimony. *See id.* 20:20–25, 25:11, 26:06–08, 30:05–10, 34:07–12. For example, when asked to articulate the specific reason for frisking Mr. Green, Officer Newport indicated that there was not a specific (i.e., single) reason—it was based on the

totality of the circumstances. *See id.* at 26:03–08, 34:05–12. This recitation accurately reflects the standard police officers are to use when deciding whether they have reasonable suspicion to perform a stop and frisk.

Even if Officer Newport's suppression hearing testimony did establish that he was inadequately trained, Mr. Green offers no evidence to prove that the failure to train police officers was the custom or policy of the City. "A municipality will be held liable for the violation of an individual's constitutional rights for failure to train adequately its officers only when the inadequacy in training amounts to deliberate indifference to the rights of the individuals with whom the officers come into contact." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *City of Canton*, 489 U.S. at 388). A municipality acts with deliberate indifference to the inadequacy of training in two circumstances: (1) when, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," or (2) "when a repeated pattern of constitutional violations makes 'the need for further training . . . plainly obvious to the city policymakers.'" *Jenkins*, 487 F.3d at 492 (quoting *City of Canton*, 489 U.S. at 390 & n.10).

Mr. Green has not offered sufficient evidence to support either theory. Assuming for the sake of argument that Officer Newport did receive only one training on the legal standard applicable to frisks, Mr. Green has not presented any evidence that other MPD officers were similarly inadequately trained. Indeed, the evidence presented by the City shows that MPD officers receive extensive training

on the legal standards applicable to stops and frisks. *See generally* Flynn Decl. Likewise, Mr. Green has not presented any evidence to suggest that Officer Newport—or any other MPD police officer, for that matter—has a history of performing stops and frisks without the requisite reasonable suspicion. One unconstitutional stop and frisk does not demonstrate a repeated pattern of constitutional violations such that the need for further training was plainly obvious to City policymakers.

At oral argument, Mr. Green cited for the first time several out-of-circuit cases that ostensibly support his argument that a single incident arising from an alleged failure to train police officers is sufficient to support a *Monell* claim. These cases are materially distinguishable from the present action. In *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), the Fifth Circuit upheld a jury verdict in favor of the plaintiff on a failure-to-train *Monell* claim. The municipality in *Brown* had a policy of not training its reserve officers, one of whom used excessive force against the plaintiff. In this case, however, Mr. Green has not offered any evidence that the City has a policy of failing to train its police officers on the legal standards applicable to stops and frisks. As such, this is not "one of those rare cases" where "the possibility of harm from a custom or practice may be so obvious that evidence of a series of prior injuries is not needed to support an inference of deliberate indifference." *See Chatham v. Davis*, 839 F.3d 679, 685–86 (7th Cir. 2016) (citing *Calhoun v. Ramsey*, 408 F.3d 375, 381 (7th Cir. 2005)).

The other cases cited by Mr. Green are similarly distinguishable. The plaintiffs in both *Johnson v. Hawe*, 388 F.3d 676, 686 (9th Cir. 2004), and *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046–47 (6th Cir. 1992), submitted the testimony of law enforcement experts who opined that the municipality in question had a policy of failing to train its police officers. Mr. Green has not submitted any such evidence in this case. *See Russo*, 953 F.3d at 1047 ("Especially in the context of a failure to train claim, expert testimony may prove the sole avenue available to plaintiffs to call into question the adequacy of a municipality's training procedures.").

Accordingly, the Court finds that Mr. Green has not presented sufficient evidence from which a reasonable jury could conclude that the City was deliberately indifferent to the lack of training of its police officers on the legal standards applicable to stops and frisks.

### b. Failure to supervise

To support his theory that the City has a custom or policy of failing to supervise its police officers, Mr. Green points to one of Officer Newport's evaluations. According to Mr. Green, three supervisors reviewed the stop and frisk at issue here "and determined that Officer Newport's actions were in conformity with Milwaukee's policies." Pl.'s Br. 6–7. Mr. Green maintains that this evaluation "demonstrates a widespread practice of unlawful stops and frisks by Milwaukee and its police officers." *Id.* at 7. Again, the Court disagrees.

First, Mr. Green mischaracterizes the evidence he cites to support this theory. With respect to the incident involving Mr. Green, the evaluation states, "On November 26, 2014 PO NEWPORT and partner responded to a suspicious person complaint. Upon arrival an [sic] subject stop was conducted and the subject was in possession of a black Sig Sauer .40 Caliber Pistol. The subject was arrested for CCW." Sulton Decl. Ex. 2. The document does not contain any facts from which Officer Newport's supervisors could analyze whether the stop or frisk was unlawful. The supervisors' signatures therefore do not serve as an endorsement by the MPD of a policy of performing unlawful stops and frisks.

Second, even assuming that the supervisors had approved Officer Newport's unlawful conduct, Mr. Green offers no evidence to prove that the failure to supervise police officers was the custom or policy of the City. Chief Flynn is the official policymaker for the MPD, not the three supervisors who signed Officer Newport's evaluation. And Mr. Green has not presented any evidence from which this Court could infer that Chief Flynn was aware of the alleged deficient supervision, let alone evidence to suggest that the practice "was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *See Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006).

Accordingly, the Court finds that Mr. Green has not presented sufficient evidence from which a reasonable jury could conclude that the City has a widespread practice of performing stops and frisks without reasonable suspicion. *See, e.g., Thomas*, 604 F.3d at 303 (noting that one or even three instances are

insufficient to establish a widespread custom or practice).

## V. Conclusion

Officer Newport violated Mr. Green's constitutional rights when he stopped and frisked Green in the O'Reilly Auto Parts store parking lot without reasonable suspicion. From this single incident, Mr. Green seeks to hold the City liable under *Monell*. Mr. Green, however, has not met his burden of establishing that this constitutional deprivation was caused by an official custom, practice, or policy of the City. That is, Mr. Green has not presented sufficient evidence from which a reasonable jury could conclude that the City has an express policy or a widespread practice of inadequately training and supervising its police officers, particularly with respect to performing stops and frisks. The Court will therefore grant the City's motion for summary judgment and will dismiss the City as a defendant in this action.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the City of Milwaukee's Motion for Partial Summary Judgment, ECF No. 62, is **GRANTED**.

**IT IS FURTHER ORDERED** that the City of Milwaukee is **DISMISSED** as a defendant in this action.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment that Mr. Green take nothing from the City of Milwaukee under 42 U.S.C. § 1983.

Dated at Milwaukee, Wisconsin, this 23rd day of February, 2017.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge